IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**RUDY YBARRA,**

      **Plaintiff,**

vs.                                     **No. CIV 03-1130 RB/ACT**

**CITY OF ALBUQUERQUE, MARTIN
CHAVEZ, in his individual capacity as
mayor of the City of Albuquerque,
GIL GALLEGOS, in his individual
capacity as chief of police of the City
of Albuquerque Police Department,
DON V. ROBERTS and S. LOPEZ,
City of Albuquerque Police Officers,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (Docs. 84 and 85), filed on October 28, 2004. Jurisdiction arises under 28 U.S.C. § 1331. Having reviewed the submissions of the parties and the relevant law, I find that this motion should be denied.

**I.**     **Background.**

Plaintiff ("Ybarra") alleges that, on August 2, 2002, he was a passenger in a car driven by his friend when they stopped at an Albuquerque Police Department DWI roadblock. (Compl.) Ybarra's friend was arrested and the car was impounded. (*Id.*) Ybarra asked numerous officers to retrieve his friend's purse from the car because the purse contained a large amount of cash. (*Id.*) Defendant Officer Roberts allowed Ybarra to retrieve the purse. (*Id.*) As he was unzipping the purse to check on the cash, Defendant Officer Lopez struck Ybarra with a closed fist on the nose and the side of the face. (*Id.*) Ybarra suffered injury to his nose that required surgery. (Compl.) Ybarra

asserts that Defendants conspired to cover up the attack by falsely accusing Ybarra of battery on a police officer. (*Id.*) The charge was dismissed before trial. (*Id.*)

Ybarra alleges 42 U.S.C. § 1983 claims for excessive force (Count I); wrongful arrest and false imprisonment (Count II); prosecution without probable cause (Count III); state law claims for battery, false imprisonment, deprivation of property (Count IV); and supervisory and municipal liability (Count V). Ybarra requests compensatory and punitive damages, as well as attorney fees and costs.

Defendants have moved for summary judgment, arguing that Lopez is entitled to qualified immunity and that they are entitled to summary judgment on all claims.

**II.     Facts.**

The following statement of facts is set forth in the light most favorable to Ybarra, with all reasonable inferences from the record drawn in his favor. *See Clanton v. Cooper*, 129 F.3d 1147, 1150 (10th Cir. 1997). Ybarra asked Defendant Officer Roberts if Roberts would retrieve Ybarra's friend's purse from Ybarra's car. (Pl. Ex. F at 83.) Roberts agreed and Ybarra and Roberts walked over to the car. (Pl. Ex. F at 84.) Other cars were parked about ten feet away from Ybarra's car. (Pl. Ex. F at 85.) Roberts opened the unlocked car door. (Pl. Ex. F at 86.) The purse was on the front seat. (Pl. Ex. F at 87.) Roberts asked Ybarra, "Is that the purse?" (*Id.*) Ybarra said "Yes sir." (*Id.*) Roberts reached in the car, grabbed the purse and gave it to Ybarra. (*Id.*) As Ybarra was unzipping the purse to check on the money, Lopez ran over and punched Ybarra in the nose. (Pl. Ex. F at 88-89.) As Ybarra fell backward, Ybarra's arms flew up and hit Roberts on the forearm. (Pl. Ex. F at 94.) Ybarra suffered an injury to his nose that required surgery. (Pl. Ex. D.)

Defendant Roberts' version of the events differs from that of Ybarra. Officer Roberts testified in his deposition that, as Ybarra pulled the purse from the car, Roberts grabbed the purse. (Pl. Ex. B.) Ybarra and Roberts then engaged in a "little tug of war" over the purse. (*Id.*) However, Roberts did not feel that Ybarra was going to be able to get the purse out of Roberts' grasp. (Pl. Ex. B.) While Roberts and Ybarra were engaged in the tug of war, Lopez came up behind Roberts and punched Ybarra in the face. (Pl. Exs. A and B.) Roberts saw Ybarra let go of the purse and stumble back. (Pl. Ex. B.) Roberts noticed that Ybarra was bleeding from his nose. (*Id.*) Roberts was surprised that Lopez had struck Ybarra in the face. (*Id.*)

**III.     Standard.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)). The movant's

initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter.  *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

**IV.     Discussion.**

**A.      Whether Defendant Lopez is entitled to qualified immunity.**

A government official is entitled to qualified immunity from civil damages when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To reach the question of whether a defendant is entitled to qualified immunity, the court must first ascertain whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the court finds that a favorable view of the facts alleged establishes a violation of a constitutional right, the next step is to ask whether the right was clearly established at the time of the defendant's alleged unlawful conduct.  *Id*.

Excessive force claims are evaluated under the Fourth Amendment standard of objective reasonableness.  *Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001).  In evaluating an excessive force claim, I must consider the totality of the circumstances.  *Jiron v. City of Lakewood*, ____ F.3d ____, 2004 WL 2931348 (10th Cir. 2004).  Relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest.  *Graham*, 490 U.S. at 396

(citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

Ybarra has testified that Lopez punched him in the nose with a closed fist without justification. Roberts testified that he did not feel that Ybarra was going to be able to get the purse out of Roberts' grasp and that he was surprised that Lopez struck Ybarra in the face. Ybarra suffered an injury to his nose that caused bleeding and required surgery. Construed in the light most favorable to Ybarra, these allegations are sufficient to state a §1983 excessive force claim against Lopez.

The next step in the qualified immunity analysis is whether the right was clearly established at the time of the individual defendants' alleged unlawful conduct. *Saucier*, 533 U.S. at 201. The Supreme Court has emphasized:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks and citations omitted).

The right of persons to be free from the imposition of excessive force was clearly established in August of 2002. *Graham v. Connor*, 490 U.S. at 397; *Cruz v. City of Laramie*, 239 F.3d 1183, 1188 (10th Cir. 2001). A reasonable officer would understand that inflicting excessive force on an individual would violate that person's constitutional rights. Therefore, Lopez is not entitled to qualified immunity.

**B.    Whether Defendants are entitled to summary judgment on Count I because Lopez's actions were objectively reasonable.**

The Tenth Circuit "will not approve summary judgment in excessive force cases--based on qualified immunity or otherwise--if the moving party has not quieted all disputed issues of material

fact." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002). Construed in the light most favorable to Ybarra, the record indicates that a reasonable officer would not have believed that Ybarra posed a threat to officer safety or that Ybarra was resisting an officer. According to Ybarra, Roberts was in the process of returning the purse when Lopez ran up and punched Ybarra. There was enough room between the cars for Lopez to assess the situation without punching Ybarra. A reasonable officer confronted with the same scenario could have avoided the use of force, or used a more reasonable quantum of force. Defendants have failed to satisfy their initial burden. Because several issues of material fact remain in dispute, summary judgment is inappropriate on Count I.

**C.   Whether Defendants are entitled to summary judgment on Count II because Roberts had probable cause to arrest and imprison Ybarra.**

In Count II, Ybarra asserts §1983 claims for false arrest and imprisonment. The Tenth Circuit analyzes the constitutionality of a warrantless arrest under the probable cause standard. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). A police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime. *Romero*, 45 F.3d at 1476 (10th Cir. 1995) Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense. *Id*.

Roberts arrested Ybarra and charged him with assault, battery and assault on a peace officer. Ybarra testified in his deposition that, as Ybarra fell backwards, Ybarra's arms flew up and hit Roberts on the forearm. His testimony indicates that he did not intend to touch Roberts. Construed in the light most favorable to Ybarra, the facts did not give rise to probable cause for the arrest and

imprisonment. Because Defendants have failed to satisfy their initial burden, summary judgment is inappropriate on Count II.

**D.    Whether Defendants are entitled to summary judgment on Count III because Roberts had probable cause to initiate criminal proceedings.**

In Count III, Ybarra alleges prosecution without probable cause. A malicious prosecution claim is cognizable under § 1983. *Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996). The analysis of a § 1983 malicious prosecution claim looks to state law for a starting point, but proceeds to the ultimate question of whether the plaintiff has proven a Fourth Amendment Violation. *Pierce v. Gilchrist*, 359 F.3d 1279, 1281 (10th Cir. Mar. 2, 2004); *Taylor*, 82 F.3d at 1561. A finding of probable cause generally vitiates a malicious prosecution claim. *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996); *Zamora v. Creamland Dairies, Inc.*, 106 N.M. 628, 632, 747 P.2d 923, 927 (Ct. App. 1987). Construed in the light most favorable to Ybarra, the facts did not give rise to probable cause. Accordingly, summary judgment is inappropriate on Count III.

**E.    Whether Defendants are entitled to summary judgment on Count IV because Roberts and Lopez acted in good faith.**

In Count IV, Ybarra asserts state law claims for battery, false imprisonment, deprivation of property. Defendants claim that they are entitled to summary judgment because Lopez used only as much force as was necessary and the officers believed the arrest was valid. Defendants state that the deprivation of property claim is based on the towing of Ybarra's car.

The New Mexico courts have held that a police officer is entitled to use reasonable force to effect an arrest. *State v. Gonzales*, 97 N. M. 610, 613, 642 P.2d 210, 213 (Ct. App. 1982) (quoting *Mead v. O'Connor*, 66 N.M. 170, 171, 344 P.2d 478, 479 (1959) (officer privileged to use reasonable force)). Issues of material fact remain in dispute on the issue of probable cause, which preclude

summary judgment on Count IV.

**F.     Whether Defendants are entitled to summary judgment on Count V because the claim for municipal and supervisory liability fails as a matter of law.**

Ybarra claims that the Defendants Chavez and Gallegos have created an atmosphere in which officers are given the freedom to use as much force as they wish with no adverse consequences. Defendants have allegedly created this atmosphere by instituting a "no settlement" policy for police misconduct cases; failing to discipline officers or refer them to internal affairs after a judicial finding that such officers violated civil rights; overturning internal affairs findings of excessive use of force; and seeking the removal or recision of judgments against officers found to have violated civil rights.

In order to impose liability on a municipality under § 1983, a plaintiff must identify a municipal "policy" or "custom" that caused the plaintiff's injury. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *City of Canton v. Harris*, 489 U.S. 378, 385 (1989), such that the municipality was the 'moving force' behind the injury alleged. *Bd. of County Com'rs. of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997).

In response to the motion for summary judgment Ybarra submitted (1) Defendants responses to his requests for admissions wherein Defendants admitted that courts found that police officers had violated constitutional rights in nine instances since August 2001; (2) excerpts of the deposition of Gallegos describing the City's system for monitoring the use of force by police officers and citizen complaints against police officers, civil suit against officers, and police policy; (3) an Albuquerque Journal newspaper article regarding the police department's failure to properly document the use of force; and (4) and Albuquerque Journal article on the City's "no settlement" policy.

As stated above, in order to satisfy the elements of the §1983 municipal liability claim, Ybarra must demonstrate the existence of a policy or custom and a direct causal link between that policy or custom and the alleged violation. Ybarra fails to raise a genuine issue of material fact with regard to either element. Summary judgment will be granted on Count V because Ybarra has failed to establish, through competent evidence, the existence of a disputed issue of material fact with regard to his claim for municipal or supervisory liability.

**WHEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Docs. 84 and 85), filed on October 28, 2004, is **DENIED AS TO COUNTS I THROUGH IV, AND GRANTED AS TO COUNT V.**

*[signature]*

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**